**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**In re:**

**MIRABILIS VENTURES, INC.,**               Case No. 6:08-bk-04237-KSJ
         Debtor.
_____/


**RACHLIN COHEN & HOLTZ, LLP,**
et al,

                    **Appellants,**

-vs-                                         Case No.  6:09-cv-1658-Orl-31

**MIRABILIS VENTURES, INC.**                 (Consolidated with:)
                                             (Case No. 6:09-cv-1659)
                    **Appellee**             (Case No. 6:09-cv-1660)
_____/

# ORDER

The instant appeals involve three consolidated cases – 6:09-cv-1658, 6:09-cv-1659, and 6:09-cv-1660 – in which groups of creditors challenge the Bankruptcy Court's refusal to dismiss the Chapter 11 cases filed by Mirabilis Ventures, Inc. ("Mirabilis") and its wholly owned subsidiary, Hoth Holdings, Inc. ("Hoth"). The first group includes Forge Capital Partners, LLC, Argent Capital Advisors, LLC, Atlantic American Capital Group, LLC, Argent BD, LLC, Argent BD Transition, LLC, Robert Moreyra, Peter Collins, Bison Mortgage Corp., and Solutions Funding, Inc. (collectively, the "Forge Group"). The second includes Rachlin, Cohen & Holtz,

LLP, Laurie Holtz, and Jose Marrero (collectively, the "Rachlin Group").[1] Because of the relationship between the two debtors, and because the two creditor groups made similar arguments below, the Court consolidated the appeals on February 3, 2010 (Doc. 14) and now resolves the appeals by way of a single order.

## I.     Background

Mirabilis was controlled by Frank Amodeo ("Amodeo"), who used the company and its subsidiaries as vehicles for an enormous tax fraud and money laundering scheme.[2] Stripped to its essentials, the scheme involved the provision of payroll services, including calculation of payroll taxes owed, to client companies. After those funds were collected from the client companies, they would be diverted to purchase property around the country rather than being paid to the Internal Revenue Service.

On April 25, 2008, the Government filed a complaint for forfeiture (Doc. 1 in Case No. 6:08-cv-670) against a number of parcels of real estate that, it contended, either constituted or were derived from proceeds of this scheme. About a month later, Mirabilis and Hoth filed voluntary petitions for reorganization under Chapter 11. The companies opted to file liquidating Chapter 11 plans.

---

[1] Prior to consolidation, 6:09-cv-1658 involved the Rachlin Group's appeal of the order denying dismissal of the Mirabilis bankruptcy, with 6:09-cv-1659 and 6:09-cv-1660 involving the Forge Group's appeals of the orders denying dismissal of the Mirabilis and Hoth bankruptcies, respectively.

[2] On September 23, 2008, Amodeo pled guilty to a number of felonies, including a failure to collect and remit payroll taxes. (Doc. 41 in Case No. 6:08-cr-176). In May of 2009, he was sentenced to 22 and a half years in prison and ordered to pay restitution of $181,810,518.66 to the IRS. (Doc. 125 in Case No. 6:08-cr-176). Mirabilis and Hoth are under criminal indictment and are set for trial in May 2010. (Doc. 127 in Case No. 5:08-cr-231).

On September 23, 2008, the Government moved to dismiss the bankruptcies, alleging that the petitions had been filed in bad faith. Shortly thereafter, the Forge Group joined in the dismissal motions in the Mirabilis and Hoth cases. The Rachlin Group also filed a motion to dismiss the Mirabilis bankruptcy. In November 2008, the Government and both debtors settled the dispute that had led to the government's filing of the motions to dismiss. The Government received property from the debtors, who retained, among other things, certain causes of action they are now pursuing before this Court. The Bankruptcy Court approved the settlements, and the Government's dismissal motions were withdrawn with prejudice.

The settlements, however, did not resolve the dismissal motions as to the Forge Group or the Rachlin Group. On August 26, 2009, the Bankruptcy Court denied those motions, concluding among other things that the Chapter 11 petitions had not been filed in bad faith, that the debtors possessed the corporate authority to file the chapter 11 petitions, and that the Forge group had not shown that Mirabilis was merely a sham corporation that should not be permitted to file for bankruptcy relief. These appeals followed.

## II.     Standard of Review

In an appeal of a decision of the Bankruptcy Court, this Court sits as an appellate court. When reviewing the Bankruptcy Court's findings of fact, this Court applies the clearly erroneous standard. *In re Williamson*, 15 F.3d 1037, 1038 (11th Cir. 1994). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on review of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Lightner v. Lohn*, 274 B.R. 545, 548 (M.D. Fla. 2002). The burden of showing clear error falls on

the party seeking to overturn the Bankruptcy Court's findings. *In re Caribbean K Line, Ltd.*, 288 B.R. 908, 911 (S.D. Fla. 2002).

This Court reviews the Bankruptcy Court's conclusions of law under a de novo standard. *Williamson*, 15 F.3d at 1038. Under de novo review, this Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court. *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001).

**III.   Analysis**

**Corporate Authority**

The creditors argue that the president of Mirabilis at the time of the filing for bankruptcy protection, R.W. Cuthill, Jr. ("Cuthill"), lacked the authority to file the petition because the director who appointed him, Michael Moecker ("Moecker") had not himself been properly appointed. A Chapter 11 petition may properly be filed only by those with the authority to do so. *In re Wallace A. Erickson & Co.*, 44 B.R. 163, 166 (Bankr.Ill. 1984). In determining who is properly authorized to file a bankruptcy petition, the court must look to state law, as well as the filing entity's articles of incorporation and by-laws. *In re Hawaii Times Ltd.*, 53 B.R. 560, 561 (Bankr.Hawaii 1985) (citing cases).

Section 3.04 of Mirabilis's bylaws requires that any vacancy on the board of directors be filled by a vote of two-thirds of the outstanding Mirabilis shares. It is undisputed that no such vote occurred prior to Moecker's appointment. Mirabilis's bylaws also provide, at Section 9.02(b), that any amendment of the bylaws must be proposed to the shareholders, who are given 30 days in which to object. It is also undisputed that this never occurred. Before appointing Moecker,

Mirabilis's directors at the time purported to amend the corporation's bylaws to allow the directors, rather than the shareholders, to appoint a new director, and to make it possible to amend the bylaws without providing 30 days' notice to the shareholders.  (Doc. 1-3 at 7).  The other directors then appointed Moecker and resigned, and Moecker brought in Cuthill as president.

Article 8 of Mirabilis's articles of incorporation provides that the company "reserves the right to amend, alter, change or repeal any provision contained in these Articles of Incorporation or its Bylaws in the manner now or hereafter prescribed by statute, or by these Articles of Incorporation, or by the corporation's Bylaws."  (Doc. 225-1 at 2 in Case No. 6:08-bk-04327).  Mirabilis, a Nevada corporation, was governed by Nevada law.  (Doc. 225-1 at 1 in Case No. 6:08-bk-04327).  Section 78.120 of Nevada's Revised Statutes, which defines the powers of a corporation's board of directors, provides that "unless otherwise prohibited by any bylaw adopted by the stockholders, the directors may adopt, amend or repeal any bylaw, including any bylaw adopted by the stockholders."  Along the same lines, Article 9 of the company's articles of incorporation authorizes the board of directors, "[s]ubject to the Bylaws, if any, adopted by the stockholders, to make, alter, or repeal the Bylaws of the corporation."  (Doc. 225-1 at 2 in Case No. 6:08-bk-04327).

Judge Jennemann found that Mirabilis's bylaws, though adopted by its board of directors in 2005, had never been adopted by its stockholders.  (Doc. 1-3 at 6).  Because of this, under both Section 78.120, Nevada Statutes, and Article 9 of Mirabilis's articles of incorporation, Mirabilis's directors had the power to amend the bylaws, without notice to the stockholders, to authorize themselves to appoint a new director.  (Doc. 1-3 at 7).  Thus, Moecker was properly appointed,

making Moecker's appointment of Cuthill legal, and therefore Cuthill's decision to have Mirabilis file for bankruptcy protection was not an ultra vires act. (Doc. 1-3 at 7).

Forge argues that Mirabilis's stockholders had, in fact, adopted the bylaws prior to Moecker's appointment, which precluded the directors from relying on Section 78.120 or Article 9 to get around the notice and stockholder vote requirements. (Doc. 15 at 24 in Case No. 6:09-cv-1660). Forge points to the affidavit of Tom Broadhead, a former secretary of Mirabilis, in which he states that he was present at a meeting in October 2005 at which Mirabilis's stockholders adopted, *inter alia*, those bylaws. (Doc. 15 at 24 in Case No. 6:09-cv-1660). Forge argues that this was the sole record evidence regarding adoption of the bylaws, and therefore the Bankruptcy Court was obligated to credit it. (Doc. 15 at 24 in Case No. 6:09-cv-1660).

However, the Forge Group did not make this argument before Judge Jennemann. The Forge Group's motion to dismiss in the underlying bankruptcy proceedings (Doc. 88 in Case No. 6:08-bk-04327) never asserted that the Mirabilis stockholders had adopted the bylaws. At oral argument on the motion, counsel for Mirabilis stated repeatedly that Mirabilis's stockholders never adopted the bylaws (Doc. 219 at 62-63 in Case No. 6:08-bk-04327), and therefore the board of directors had the power to appoint Moecker. Despite being allowed to provide a lengthy rebuttal (Doc. 219 at 69-75 in Case No. 6:08-bk-04327), counsel for the Forge Group never contradicted the assertion that the bylaws had not been adopted by the stockholders.

At the conclusion of this oral argument, the Bankruptcy Court requested additional briefing on the corporate authority issue. The Forge Group's response (Doc. 225 in Case No. 6:08-bk-04327) also failed to assert that Mirabilis's bylaws had been adopted by its stockholders. To the

contrary, the Forge Group implicitly admitted that no such adoption had occurred. Anticipating the debtor's argument, the Forge Group stated that

> Mirabilis may contend that it can amend the Bylaws because they were not "bylaws adopted by the shareholders" and the Nevada statute allows directors to amend any bylaws unless prohibited by the "bylaws of the stockholders."

(Doc. 225 at 8 in Case No. 6:08-bk-04327). After setting forth the debtor's argument, the Forge Group did not dispute its factual basis – *i.e.*, that the bylaws had never been adopted by the stockholders. The Broadhead affidavit was not mentioned. Rather, the Forge Group argued that a lack of adoption by the stockholders was of no moment, because "once the Board of Directors enacted the Bylaws of the corporation, the Board of Directors were bound by the provisions set forth in the Bylaws." (Doc. 225 at 8 in Case No. 6:08-bk-04327).

Having failed to make this argument below, the Forge Group cannot now argue that the Bankruptcy Court erred by failing to agree with it.[3]

**Bad Faith**

Section 1112(b)(1) of the Bankruptcy Code requires a court to dismiss a Chapter 11 case or convert it to a Chapter 7 case if "cause" to do so has been established. Such "cause" is not explicitly defined in the Code. However, a debtor's lack of good faith in filing a bankruptcy petition may constitute cause for dismissal. *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984). The determination of cause is subject to judicial discretion under the circumstances of each case. *Id.* A bankruptcy court's decision regarding whether to dismiss a Chapter 11 case for

---

[3]It is also worth noting that, contrary to the Forge Group's assertion, there was at least one piece of evidence supporting the notion that the bylaws had not been adopted by the stockholders: the bylaws themselves, which state that they were adopted by the board of directors, but do not state that they were adopted by the stockholders. (Doc. 225-1 at 7 in Case No. 6:08-bk-04327).

-7-

cause will be upheld absent an abuse of discretion. *In re AMC Mortg. Co.*, 213 F.3d 917, 920 (6th Cir. 2000).

To determine whether a debtor has filed in bad faith, courts may consider any factors that demonstrate an intent to abuse the judicial process and the purposes of the reorganization provisions, particularly factors that show that the petition was filed to delay or frustrate the legitimate efforts of secured creditors to enforce their rights. *In re Phoenix Piccadilly, Ltd.* 849 F.2d 1393, 1394 (11th Cir. 1988). Courts have identified a number of circumstantial factors that may constitute evidence of a bad faith filing, including:

> (I) The Debtor has only one asset, the Property, in which it does not hold legal title;
> (ii) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;
> (iii) The Debtor has few employees;
> (iv) The Property is the subject of a foreclosure action as a result of arrearages on the debt;
> (v) The Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in the pending State Court Action; and
> (vi) The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.

*Id.* at 1394-95.

The Rachlin Group argues that these Chapter 11 petitions were filed in bad faith because the debtors had no intent or ability to reorganize, and intended all along to self-liquidate. (Doc. 23 at 16). In support of their argument that this intent on the part of the debtors requires conversion or dismissal, they point to *In re Lyons Transp. Lines, Inc.*, 123 B.R. 526 (Bankr.W.D.Pa. 1991).

Faced with a Chapter 11 debtor asserting a right to file a liquidating plan, the *Lyons* court examined the history of Chapter 11 and determined that it was intended as a means of

rehabilitation of the debtor, not liquidation. *Id.* at 528-30.  The *Lyons* court concluded that, although provisions of Chapter 11 permit a debtor to file a liquidating plan, "there is no authority in the Bankruptcy Code allowing a debtor to file a petition for relief under Chapter 11 *for the purpose of* self-liquidation." *Id*. at 534 (emphasis added).  The court then converted the case to one under Chapter 7. *Id.* at 535.

The opinion in the *Lyons* case has not been widely cited.  The Court's research uncovered only two opinions in which it was cited positively: *In re After Six, Inc.*, 154 B.R. 876 (Bankr.E.D.Pa. 1993) and *Locks v. U.S. Trustee*, 157 B.R. 89 (W.D.Pa. 1993).  Both of these cases involved liquidating Chapter 11 plans.  However, neither opinion discussed the possibility of conversion or dismissal of the Chapter 11 proceedings, and neither cited *Lyons* for the proposition advanced by the creditors here – *i.e.*, that a debtor cannot file a Chapter 11 petition if, at the outset, it intends to liquidate.  In fact, the *Locks* case was precisely the type of case that the *Lyons* court had held could not properly be filed under Chapter 11. *See Locks* at 91 ("From the beginning, [this] case has been a liquidating bankruptcy under Chapter 11 . . . rather than a reorganization intend to facilitate continued operations."). Despite this, the opinion in *Locks* does not even address the possibility of conversion or dismissal of the Chapter 11 proceedings.

As the *Lyons* court recognized, several provisions of Chapter 11 authorize a debtor to file a liquidating plan.  Section 1123 of the Bankruptcy Code establishes that a plan may "provide for the sale of all or substantially all of the property of the estate."  Section 1129 explicitly contemplates liquidating plans, providing that a Bankruptcy Court shall only confirm a plan if, among other things, "[c]onfirmation of the plan is not likely to be followed

by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).  The clear weight of authority permits a Chapter 11 debtor to file a liquidating plan.  *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 517 n.3 (8th Cir. 2004) (citing cases).  And nothing in the Code requires a Chapter 11 debtor to attempt rehabilitation before filing such a plan.

Numerous cases recognize that a liquidation under Chapter 11 differs from one under Chapter 7.  For example, the former allows a debtor in possession (who is presumably more familiar with the organization's assets, and their values), rather than a Chapter 7 trustee, to plan for an orderly divestiture over time.  *See In re Holmes*, 298 B.R. 477 (Bankr.M.D.Ga. 2003).  In a proper case, the expertise of the debtor in possession can result in a liquidation that produces more for the benefit of creditors than would a liquidation conducted by a Chapter 7 trustee.  It should be obvious that a debtor who hopes to achieve such a result would not be attempting to abuse the system by filing a Chapter 11 case rather than a Chapter 7 case.  However, under *Lyons*, such a filing would necessarily constitute cause for conversion or dismissal.  This Court finds no basis to conclude that Congress intended such an incongruous result, and respectfully declines to follow the *Lyons* rationale.  Accordingly, the Court concludes that the Bankruptcy Court did not err in rejecting the notion that a debtor that intends to self-liquidate must file under Chapter 7, or not at all.

The Forge Group also argues that the Chapter 11 petitions were filed in bad faith because they were done for an improper purpose – to help Amodeo with his criminal case.  They point to statements by Amodeo that he hoped the filings would maximize the amount

of money that would be paid over to the IRS, and that the sentencing judge would take this increased recovery into account when determining his sentence.  However, the decision to file was not made by Amodeo, and there was no evidence presented that Cuthill (or Moecker, for that matter) intended to aid Amodeo by doing so.  In addition, the possibility that the filings might benefit Amodeo should not obscure the fact that such benefit would result from creditors recovering as much as possible from the debtors.  An unsavory but secondary effect of such a recovery is not enough to establish cause for dismissal or conversion.

The creditors make several other arguments as to why the filings were done in bad faith, but none warrant extended discussion.  The Court finds that Judge Jennemann did not commit legal error or abuse her discretion in concluding that the creditors had not established cause for dismissal or conversion.

**Sham Filing**

Relying primarily on statements made by Amodeo as part of his plea bargain, the creditors argue that Mirabilis and Hoth were "shams" that primarily served to further Amodeo's criminal scheme.  As such, the argument continues, Mirabilis and Hoth have no standing or ability to file or maintain these bankruptcy proceedings.  However, the cases they cite in support of this argument involve debtor entities being precluded from suing other entities due to an alter ego defense or the doctrine of *in pari delicto*.  The creditors were unable to cite a single case where a bankruptcy case itself was dismissed on these grounds.  Even assuming the truth of Amodeo's statements – something the Bankruptcy Court was not

required to do – the creditors failed to show that Mirabilis and Hoth lacked standing to file or maintain their bankruptcy cases.

**IV.    Conclusion**

The creditors have failed to show that the Bankruptcy Court erred by failing to grant the motions to dismiss.  The order of the Bankruptcy Court is therefore **AFFIRMED**, and the appeals in these consolidated cases are **DISMISSED**.  The Clerk is directed to close these files.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 21, 2010.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party